May it please the Court, my name is Anthony Capozzi. I'm an attorney from Fresno, California. I represent the appellant, Adam Henry, in this case. What I'd like to do is focus on one issue that would, I think, deal with Count 1, the exploitation, the conspiracy to exploit a minor, and that had to do with the jurisdictional issue. The government never proved, the elements, there's three elements in terms of exploitation of a minor. One of the elements is to show that the device used to take the photos, to take the videos, was made out of state. The government attempted to, through a police officer, to say that a camera found in the bedroom was the one that took the videos in this particular case. Well, I objected as a lack of foundation. There was no basis for the officer to state that this was the actual camera that took the videos. The judge sustained the objection and struck all of the evidence as to whether or not this device had made those videos. And without any evidence of interstate lines involved in this case, there's no jurisdictional basis for the court to proceed and to determine that there was enough evidence to show all the elements of the crime. No evidence was presented. This isn't what I was thinking about when I came in to hear this argument. I'm not even sure if this issue was raised in your brief. Yeah, it was. It was. Where is it? It was in the opening brief and in a reply brief. I just wanted to bring it up. Where in the opening brief? Well, let me see. I have it in page 19. I think it's in the reply brief. Page 19. It was brought up at trial. Well, if it's in the reply brief, we may not have to pay attention to it. I want to know where in the opening brief this issue is raised. In the opening brief, you objected to, in your prosecutorial misconduct argument, you raised some of the comments that the prosecutor made about this issue, but you didn't independently say that there was insufficient evidence of this element. I expanded on it. I did argue there was insufficient evidence on count one. One, because the pictures that were picked up. Not because of the jurisdictional element. I brought it up. I think it was in one sentence when I come back. Well, you better find that sentence when you come back on rebuttal. I will. Because I don't think this argument is teed up in front of us. Okay. All right. I still think there wasn't enough jurisdiction based upon that. It was clearly brought out in the reply brief, but I'll find it in my opening brief when I come back on my reply. But, anyway, in looking at the pictures that were there, to me, these were more of a voyeurism rather than child exploitation. To show child exploitation in the Steen case, you must depict sexually explicit conduct. None of that was here in this particular case. We have the ten snapshots of the bedroom, and that's with the defendant's wife having the minor in her, having her putting on different corsets and bras and things of that nature. It doesn't amount to anything like the cases that will found child exploitation. There's nothing with a child doing anything sexually explicit. The photos don't show any genitalia area. Counsel, even if we assume that you are right with respect to the images that were actually produced, the charge here was conspiracy. I understand. And why isn't it a reasonable inference, given the placement of the camera, his obvious interest in the images that were captured of the minor, why isn't it a reasonable inference that the object of the conspiracy was to sexually exploit the victim? Because you have to show. Even if he didn't, even if we assume that he failed ultimately to do that. And that's the government's argument. This is a conspiracy, not child exploitation. But it is a conspiracy to commit child exploitation. Now, what was the agreement between the two? We have no idea. There's a camera set up in a plant. It's high up. All of the photos that were taken were from the waist up. The only time that after a shower, the victim got out of the shower and was drying herself off. There was a short, maybe a second and a half in the video, and a snapshot of her totally nude. But there's no sexual activity. There's no exploitation. There's a picture. There's no question about that. I don't know where that comes in to be child exploitation or an agreement to commit child exploitation. Well, when I was a kid, and that was a long time ago, and the early days of Playboy magazine, and one of my friends had a father who had Playboy, and he'd smuggle them out. And the pictures that they showed in those days were pretty much limited to what you've just described. It's not hard to infer that those pictures were intended to be sexual, I guess I couldn't say exploitation, but to generate sexual responses. So if a jury in this case has decided, based on the evidence, that these pictures may not be graphic like what we've come to find much more common in our current day, they were enough for their purposes to conclude that, yes, this defendant was guilty of a conspiracy to sexually exploit this minor. Why isn't the evidence sufficient for that? Because when you have the Ferber case that says nudity by itself is not pornography and is not child pornography, that's why. The law is explicit on that. But it doesn't say that nudity can't be. Oh, true. Well, that's what we got. And so this jury had an opportunity to consider the evidence here and decides this isn't one of those pictures that's hanging on the wall of the Metropolitan Museum, this is somebody who's trying to exploit the young girl who's in the bathroom. I don't think these pictures match the description of other cases that say, especially when you get into the Overton case and the dose factors, you have to have someone telling them what to do, what kind of do with the mother or the wife telling her stand this way, do this. But all you do is you see a partial picture of a bosom in the bedroom pictures. The only picture, and I'll get to this exhibit that shows the victim naked at the one snapshot, that was not given to us. Let me move on to the issue of 2813. Maybe I'll go to that first, then come back to the Ruzicka testimony. The government, we had a number of in limited motions, a number of discovery motions in this case, four, five, six times. Every time we went into court, and it was District Judge Ishii that was handling this, we went in each time and I said, how many snapshots are there? The response was always 10 snapshots, 10 from the bedroom, 2 from the bathroom, all the way up until trial. We get into trial, there's now 13 snapshots. The 13th one was supplied to the defense Friday before the day of trial on Tuesday, and I didn't catch that until the government tried to introduce it. Well, we have a factual finding from the district court that I don't see as been disputed as clearly erroneous that says it was actually made available to defense a long time before. The problem was in the identification or the apparent inability to identify who was in that picture. That's what came out late. It came out two weeks before trial. The detective going, preparing for trial, noticed that this other snapshot was of the victim. He then notifies the U.S. attorney, I don't know how he did it, he didn't explain how he did it, two weeks before trial. We were never notified. Well, but nobody else was notified either. Well, the U.S. attorney was. Well, two weeks before trial. Right. So we're looking at this two-week period. Now, when within that two-week period was defense advised? Four days before trial in an exhibit of over, I think there were 100 exhibits, and didn't even pay attention to it until it was introduced. And I go, I object, Your Honor. Where did this come from? And then when we presented it with the judge, the judge says, well, that's not even the victim. And then the officer came in and testified how he found us to be the victim. So it was something that I think played upon us at the very end. To what degree was that additional photo damning any more than the other photos? Well, the other photos really didn't show any genitalia at all. This one did. Yeah, okay. Okay? And it was a quick photo of it, and that was it in the video. What authority would you cite? I mean, this is not a question of the photograph not being produced. It's a question of the significance of the photograph not becoming apparent until a short time before trial and then you being advised sometime after that. So what precedent should we look to for that situation? I'm just arguing it's due process. Getting hit with that at the end, we're surprised with it. Well, due process is a little vague. Is there any case authority that speaks to that kind of situation? I mean, things come up late. And I don't think there's a rule that says the fact that evidence doesn't surface until late so that even the prosecutor doesn't know about it means it can never be used. So what is it tells us that there's a violation of due process to wait until four days before trial to provide the key piece of information? I had to file the limine motions. I had to present to the court what I wanted to present in this case. Why didn't the U.S. attorney come in and present this motion, present a limine motion saying, Judge, we just found this. We want to introduce it to evidence, and maybe had a hearing outside the presence of the jury to determine whether or not that was a picture of the victim. This came at the time of trial. We were surprised. We didn't have a lot of time to cross-examine on it. The other issue that I think is very important in this case is the testimony of the CPS officer. The CPS officer's two raids in the house, one in September 2013, state charges I filed against my client. He goes to court, pleads not guilty, has an attorney. Two months later, November 2013, the agents come in again, but this time bring a CPS officer with them. This CPS officer meets with them before the search, goes through all of the search directions and what they're supposed to do. Police come into the house with their guns, approach my guy, put him under arrest, handcuff him, sit him in a chair, advise him, as Miranda writes, I want my lawyer. I have a lawyer. So they back off. CPS comes in and starts asking him about child pornography and how were the children involved in this. To me, he is acting as a police officer and is dealing as a state agent with all these other officers. The court said, no, he's not law enforcement. He is not acting in concert with law enforcement. He's not interrogating. He's conversing with the defendant, and he's a rebuttal witness. Well, there's quite a few cases, not cases, but my argument is California. Focus on the rebuttal witness part. I'm sorry? Please focus on the rebuttal witness part, because that seems to me to be the biggest distinction from the Second Circuit case you cited to us. It's the fact that he's a rebuttal witness, and they're saying he's allowed because it is rebuttal. Well, the Supreme Court has made rebuttal different. I mean, you've got Miranda, you've got Harris. Right. The point is, there should have been an instruction when that rebuttal witness testified. Did you request an instruction? I did not. Well, then. Well, I did not. So is there any authority that says the failure of the district court to come up with such instruction on its own when not requested is there? I think the case I cited was not the Ortega, but the Harris v. New Yorker. One of the two cited that, yes, this can be used as rebuttal evidence, but there must have been, and it was the Ortega case, that evidence could be allowed, but there has to be a jury instruction on credibility. I didn't request it at the time. Frankly, I was so upset that this came in in the first place because the court was saying it wasn't law enforcement officers. Assume for purposes of my question that the instruction should have been given. Right. And that it were not to be given. Would you address harmlessness? The what? Harm or harmlessness of allowing that to come in. Well, I think it undermined the entire case of the defense. The defense in the beginning. Say more on why that's so. Say more as to why that is so that it, quote, undermined the entire case. Well, from the opening of the case, we started out opening statement that my guy was not involved. His wife was the one who was doing most of this or all of it. He did not knowing this was going on. And then he testified to that. The opening statement was that. Obviously, the final arguments were that. But the thing that comes in is this comes in and undermines everything that this defense had pursued throughout this entire trial. But even with a limiting instruction, that would be okay, right? The limiting instruction would have said you can't consider this as affirmative evidence of guilt, but you can consider it to impeach. Right. And the fact that it undermines the false exculpatory narrative that it was actually the wife's doing would have been permitted. So to return to the question, where is the prejudicial effect of not having that limiting instruction? Because the jury didn't get to consider whether or not this dealt with the credibility of the defendant. There was so much evidence in here of the wife's involvement. Indeed, all of the pictures in the bedroom is the wife in the minor, nothing to do with the husband. And yet all of these were brought in. The other part in the final argument, I just haven't made a left on it real quick, the final argument is when the U.S. attorney argues what a great attorney I am, what a great job I did, how my job is to give alternative facts, to bring out facts that are not true. And then it went on with that. I didn't object. I've tried a lot of cases, and I found if you object too much, the jury turns against you. But then the government went on even more. In the unlimiting motions, the court said adult pornography is not to be part of this case. Well, what happened just before trial is a new judge came in, had just been appointed. He was given this case a week before trial. In the final argument, the government argues, look at all the adult pornography here. You can look at this any way you want. Some people don't like it, but that's your choice, ladies and gentlemen. This man was going from adult pornography to child pornography and asked that they found him guilty. I've got about 20 seconds left. I'd like to reserve that to come back. We'll give you an ample time to respond. All right. Thanks, Judge. Good morning, Your Honors. May it please the Court, David Gappa for the United States. I was one of the prosecutors who presented the case in the district court. The district court did not abuse its discretion when it denied the defendant's motion for a mistrial or for a new trial based on the brief rebuttal testimony from the Child Protective Services Officer, Antonio Rusca. The court found that that officer was a social worker, not a law enforcement officer, that Officer Rusca was at the search scene when the federal agents arrived and there for a different purpose, not acting in concert with law enforcement. Although he had attended a briefing with law enforcement, the record is clear that Rusca did not enter with the law enforcement officers. They had secured the residence, the scene, had advised the defendant of his Miranda rights. The defendant had invoked the Miranda rights and decided he didn't want to speak with the detectives. They moved on and focused elsewhere for the investigation. Then Rusca approached and identified himself and stated the purpose for his visit. Let's assume for purposes of my question that I disagree with you as to the violation and that it should not have been admitted except for purposes of my question. Are you on that basis, would you please? Yes. Then the only potential problem would have been the lack of a limiting instruction, but that was, as this court has noted, not requested. It was not given. However, there was a general instruction by the court on the joint instructions that credibility should be determined by looking at various factors, and it would be up for the jury's consideration to determine how much weight, if any, to give Rusca's testimony. It's important also to note that the government did not reference Rusca's testimony in its closing argument, nor did it reference it in the rebuttal closing argument. So the government went out of its way after it saw the defense concern on that issue not to in any way highlight that, and so we don't believe that it would meet the standard for reversal of the conviction. What evidence was there of the defendant's involvement and, therefore, evidence of conspiracy except for his statement to the social worker? There was abundant evidence, Your Honor, and it includes there were videos that they actually recorded of themselves in the residence installing the cameras, and there were different cameras that were used. The cameras were strategically placed to capture the best possible. So there were videos of the two of them putting the cameras. Okay. What other evidence? There was evidence, then, of the defendant rummaging through some of the clothing of the 14- and 15-year-old victim. Defendant, plural, you say? Of the defendant, the only defendant here, Mr. Henry, and he was the only defendant charged in the conspiracy. His wife was being prosecuted in the state in Stanislaus County. But he held up her undergarments, her underwear, and articles of clothing after she had been in the bathroom, after he presumably would have had access to see what she had done in terms of changing clothing and putting on a bathing suit. There was that. There was evidence on the computers that he had access to. He had set up not only the work network, but he had also set up the home network. And on the network-attached storage device, which is a computer with different partitions, there was a password-protected side, which he said only he had access to. That's where the child pornography was found. And there were also the images of this minor victim on that side. And he had organized that in a way consistent with how previous organization had been done on other computers. There was use of files. And his testimony was that his wife had no access to the password-protected side? He had told that to Detective Hively, that only he, Adam Henry, had access to that partition. That it was password-protected and he did not share that password with her. Now, at trial, he wanted to say, and he actually did testify, well, I told Detective Hively that she had the pass. But he never came out and said that he had told Detective Hively that he had provided the password. In fact, the testimony from Detective Hively, and it was recorded, was the defendant's statement that he did not share that password. He also had stated that he did not share the work network password. And that supports the idea that it was the defendant and not his wife who had downloaded the child pornography on the work computer. Because there were four devices on which child pornography was found. There was the lock-and-stitch hard drive, and that was material downloaded with the Shiraz file-sharing program. There was material on the network-attached storage device, the home network, on the partition that was password-protected, which he said only he had access to. And at trial, the government was able, through the testimony of Detective Hively, to show that there was a remote access program which would allow a user, such as Adam Henry, who had set up both networks, to remotely log in to the lock-and-stitch network, download files, transfer them to the home network. And that's exactly what happened on the morning of the second search. There were files that had been transferred, child pornography, that had been transferred from the lock-and-stitch computer to the home network. So it was that evidence. There was evidence of child pornography that had been downloaded with a file-sharing program on an old computer that had been last used perhaps in 2010. That was in the garage. And the government's evidence suggested and proved that the defendant's wife did not use that computer. That was a computer that he had set up, had used at one time, and after it was no longer of value to him because he had newer, faster, better computers, that one went into the garage. So it was a reasonable inference that the defendant was the one who was responsible. But in addition to that, there were also text messages between Adam Henry when he's at a minor league baseball game, and he's taking photos of young girls and sending those to Angel Henry with comments. And there was reference to, she looks like she's in that category that we had talked about. There were comments. Redheads needed to be represented too. And there was a reference from Angel to the defendant that this victim, who was their babysitter at age 14 and 15, had asked whether she could spend the summer in tan topless at the house. And so there were communications that showed that they both had an interest in this particular victim, but only the defendant had the interest in child pornography. There were also search terms that were used on the work computer. So there was abundant evidence in response to the court's question of what else was there. So we think, putting all of that in its context, that there's very little chance that the jury couldn't have concluded both that there was a conspiracy, which is the essence of the charge. And on that point, we just note that there was a superseding indictment which clarified that it was a conspiracy. The initial indictment referenced attempt or conspiracy, but the superseding indictment said simply conspiracy. We tried to make that more clear that it was a conspiracy, and this defendant was charged with that. And as the court has noted and understands, the essence of that is an agreement. So it's just that there were two more persons, the defendant and his wife, and they had the intent to sexually exploit. The district court seemed to have either some skepticism or confusion of why it wasn't also charged as the actual sexual exploitation because he thought it appears that some of the material met that threshold. The particular image that the defense had the most concern about, 28.13, was provided, as the court noted. And as the district court found, and that's not clearly erroneous, that that material had been turned over to the defense in early 2014 and had been made available. Except the significance of it wasn't identified. That's correct. So when was defense told that there had been this late identification of the victim as the person in that photograph? Well, there are a couple points. I don't know that there was ever a specific communication that said, here is an exhibit, 28.13, and it relates to what you've been provided throughout in the discovery for years in different reports, untitled 11, because there's reference to 10 snapshots, 10 still images, 1 through 10, untitled 1 through untitled 10. They were actually always in these reports referenced to you. Maybe hidden in plain sight. It was. Okay, so at some point in time, the timeline we were given by the defense was that approximately two weeks before trial, an agent figures out, gee, this one's relevant because it's a victim. Your office is informed. And then we were told maybe four days before trial, amongst other things, that photograph was included. But it wasn't, we were told, until the trial itself and the effort to introduce that photograph that the defense has any reason to think that photograph makes any difference. Is that timeline correct? Not entirely because approximately 7 to 10 days before trial, the deadline had come for the defense, I'm sorry, for both sides, but particularly for the government to provide its exhibits. How many exhibits were there? There was, I don't know the exact number, but it was a lot. Once again, the question is, is it hidden in plain sight? It's in there, but the significance is probably not going to be apparent unless you know what you're looking for. So at what point did a defense attorney have reason to understand what it was that was going to be presented and offered as evidence during the trial? Probably approximately one week before the trial when the binders were provided. So in the binder, if they could figure out that in the binder, as opposed to, and how was that photograph identified? Had it been given that 13 number by that point? It had an exhibit sticker at that point. Okay, so it was 28.13. Correct. And was the defense notified at that time that you would contend that this was a picture of the victim? It was included as part of that series of 28.1 through 28.13. So I don't know there was an explicit statement that here are 13 as opposed to 12 still images. Here's my concern. You can't have such a thing as hidden in plain sight, and it sounds to me like really defense shouldn't have been expected to understand what it was going to have to deal with until like the time it was presented at trial or if it was doing a lot of detective work and surely would have looked at the exhibits. But I'm not sure going through what was a thick binder of exhibits, the significance is going to be apparent. So why isn't that a concern? Well, I think the court, when you read the record, will know that the defense filed a post-trial motion for discovery and then there was a hearing. And at the hearing, the government had laid out all of the discovery that had been provided in the timeline and showed copies of reports where that particular image had been identified. Well, I see the district court has made a finding, which is clearly not clearly erroneous, with regard to it having been made available literally years before. But I'm working on the other part of that, the significance of it. And it's not as clear to me, although I might have missed it when I was looking at what the district court said, that there is a finding as to when defense counsel was advised about the key information, which is that this depicts the victim. Is there a finding on that question? Not to my memory. So I guess I'm still grasping, so where are we? Are you offering up as a factual defense something that the district court apparently didn't make a finding on, that is, when that information was given to the defense? Are you offering up a legal argument that says, doesn't matter, he's got the photograph, it's not my problem as to whether he understands what it's about, and what's the basis for me to set aside the defense objection? Sure. A couple points. One, there was the finding by the district court that the material, in particular that image, had been provided years in advance. And there was reference to even as Exhibit 28.13, that having been provided prior to trial, approximately 7 to 10 days. But then in addition, it would have more significance, not that it's not significant, but it would have more significance if the charge were the 2251 sexual exploitation of a minor and that were the basis for the charge. That would be much more significant. But because this is a conspiracy, the essence of that charge is the agreement. And whether or not any of those images, the still images or the videos from which they were produced, met the standard of a minor engagement. I hear that distinction, but you still have the sexually exploit element. And this photograph at least has been described. I confess I haven't spent that much time actually looking at the photographs, but as described to me, this photograph is different. It is the one that shows the full frontal nudity of that victim, and it was taken from a video. So the defendant saw that video, had edited the video, and froze it at that particular moment just as he had done for arguably the most explicit scenes from the bedroom video which the defendant's wife had created. So it did have some difference from the others. But again, the essence of the charge was conspiracy. Let me ask you, this is not what you've so far argued. I want to make sure. The sentence was 20 years? 240 months, correct. And where did that sentence come within the guidelines? It was below the guideline range. The low end of the range was 262 months, and so Judge Droz, under the 3553 factors, very downward. And the conviction was conspiracy with respect to this victim, not with respect to other child pornography, is that correct? Correct, although there were two counts. So there's the 2251, 15-year minimum, 30-year maximum, and then the second count was for receipt or distribution of child pornography, five-year minimum, 20-year maximum. And so he ended up with a maximum on count two, concurrent with closer to the minimum on count one. Okay, thank you. Thank you. Thank you. Would you put two minutes on the clock, please? Just a quick comment. There were over 10 minutes. Let me start with the question I posed to you before. Where in the opening brief is he? Page 54. Okay. Page 54, I commented on his closing argument, talking about the items manufactured outside the State of California, which he argued, which is important for jurisdictional basis, so I did want to point that out to you. And the next comment by me was, there was no evidence ever produced as to which device recorded the videos in count one. And all of this comes under a heading, government's comments in the final argument were improper and highly prejudicial to the defense. Do you think that makes an argument that the conviction should be set aside because the interstate element wasn't proven? No evidence was ever produced as to which device recorded the video, in this case, in count one. And then I expanded on that in the reply brief. I was running out of pages. And that's the argument you start with at oral argument. I don't think that argument's ever been made to us. And be aware the next time you're asked to present a brief, that you really need to make the arguments and identify the issues you're going to proceed with. So go ahead and say what you want to say. Okay. I expanded that in the reply. Expanding in the reply doesn't help if it's not teed up in the opening. And it wasn't teed up in the opening. Okay. What I wanted to point out on the other issues here is that there were 10,000 videos and pictures in this case. For that one picture to be discovered by the defense, I think, is requiring quite a bit from our perspective when every unlimited motion, every discovery motion we asked for said there were 10 snapshots in the bedroom, two from the bathroom. And the government just argued that the defendant took these snapshots. There was no evidence that he actually did that. All we're asking for is the court to reverse and remand us and give us a chance for another trial. And thank you for allowing me to argue. Thank you very much. Let's thank both sides for their helpful arguments in this case. United States v. Henry, now submitted for decision.
judges: W. Fletcher, Clifton, Miller